681 A.2d 1266

COMMONWEALTH of Pennsylvania, Appellee,

v.

Richard H. JENNER, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Craig A. WELSHANS, Appellant.

COMMONWEALTH of Pennsylvania, Appellee,

v.

Raymond KING, Appellant.

Supreme Court of Pennsylvania.

Argued Jan. 26, 1995.

Decided July 30, 1996.

446

Robert B. McGuinness, Towanda, for Richard H. Jenner.

George E. Lepley, Jr., Williamsport, for Craig A. Welshans.

Mark F. Morrison, Uniontown, for Raymond King.

Robert G. Fleury, Troy, Stephen G. Downs, Towanda, Thomas A. Marino, Williamsport, Kenneth A. Osokow, Philadelphia, Bradley S. Hillman, Pittsburgh, and Ralph C. Warman, Uniontown and John A. Kopas, III, Fairchance, for the Commonwealth.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE and MONTEMURO, JJ. Nos. 71 M.D. Appeal Dkt., 49 W.D. Appeal Dkt. 1994.

Before NIX, C.J., and FLAHERTY, ZAPPALA, CAPPY, CASTILLE, NIGRO and NEWMAN, JJ. No. 72 M.D. Appeal Dkt. 1994.

## *OPINION OF THE COURT*

CASTILLE, Justice.

Each of the appellants in this matter was cited for a traffic violation for driving a motor vehicle on the public roads of Pennsylvania while their driver's licenses were suspended. Each of the appellants' licenses had been suspended at the time of the motor vehicle offense for a non-Driving Under the Influence of Alcohol or Controlled Substances related offense (hereinafter referred to as "non-DUI-related offense").[1] Each appellant also had been convicted and had his license suspend-

---

1. § 3731. **Driving under the influence of alcohol or controlled substance**

(a) **offense defined.**—A person shall not drive, operate or be in actual physical control of the movement of any vehicle:

(1) while under the influence of alcohol to a degree which renders the person incapable of safe driving;

(2) while under the influence of any controlled substance, as defined in the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, to a degree which renders the person incapable of safe driving;

(3) while under the combined influence of alcohol and any controlled substance to a degree which renders the person incapable of safe driving;

(4) while the amount of alcohol by weight in the blood of the person is 0.10% or greater; or

(5) if the amount of alcohol by weight in the blood of the person is 0.10% or greater at the time of a chemical test of a sample of the person's breath, blood or urine, which sample is:

(i) obtained within three hours after the person drove, operated or was in actual physical control of the vehicle; or

(ii) if the circumstances of the incident prevent collecting the sample within three hours, obtained within a reasonable additional time after the person drove, operated or was in actual physical control of the vehicle.

ed for a DUI-related offense at the time he was stopped.[2] The issue herein is whether the DUI-related license suspension was in effect at the same time each appellant's non-DUI license suspension was in effect, so as to subject him to the sentencing enhancement provisions of 75 Pa.C.S. § 1543(b),[3] or, alternatively, whether the DUI-related suspension period became effective only after the expiration of the earlier non-DUI suspension period. For the reasons expressed herein, we affirm the Superior Court's affirmance of the trial courts' judgments of sentence applying the sentencing enhancement provisions of the Motor Vehicle Code to appellants' sentences.

## COMMONWEALTH v. JENNER

The evidence related to the sentence at issue is that appellant Richard Jenner was stopped while operating a motor vehicle on October 7, 1991, for travelling 57 mph in a 40 mph speed zone. At the time he was stopped, Jenner was unable to produce a driver's license upon the state trooper's request. Jenner told the trooper that his license had been suspended as a result of a prior conviction for driving under the influence of alcohol or a controlled substance.

The trooper subsequently obtained a certified copy of Jenner's driving record, which revealed that Jenner's license had been surrendered to the Department of Transportation on

---

**2.** Jenner's license was suspended under a five-year habitual offender revocation as a result of a conviction for driving while his license was suspended or revoked.

Welshans' license was suspended for two years as the result of a conviction for driving while his license was suspended or revoked.

King's license was suspended under a two year habitual offender revocation as a result of a conviction for driving while his license was suspended or revoked.

**3.** Any person who drives a motor vehicle on any highway or traffic-way of this Commonwealth *at a time when their operating privilege is suspended or revoked* as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) or *because of a violation of section* 1547(b)(1) (relating to suspension for refusal) or *3731* shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of $1,000.00 and to undergo imprisonment for a period of not less than 90 days. 75 Pa.C.S. § 1543(b) (emphasis added).

June 25, 1982, and was currently suspended as a result of numerous DUI-related and non-DUI-related offenses. With respect to the DUI-related suspension about which Jenner had advised the trooper, Jenner had pleaded guilty to driving under the influence on November 16, 1989, and received notice of the DUI-related driver's license suspension on April 4, 1990. The trial court in that DUI-related suspension case imposed a two-year driver's license suspension which was to become effective March 1, 1994, at the conclusion of the suspension period for the prior non-DUI offenses, i.e. consecutive to the other earlier suspension periods imposed.

Based upon this evidence, Jenner was convicted in a summary trial of driving while his license was under suspension or revoked for a DUI-related offense, fined $1,000.00 and sentenced to a mandatory ninety days imprisonment under 75 Pa.C.S. § 1543(b). Jenner appealed the summary judgment and was convicted in a trial *de novo* in the Bradford County Court of Common Pleas. Post verdict motions were denied and the same sentence was imposed. Jenner now appeals from the order and memorandum opinion of the Superior Court affirming the judgment of sentence.

## COMMONWEALTH v. WELSHANS

Appellant Craig A. Welshans was involved in a two vehicle accident at the intersection of State Routes 44 and 973 on May 31, 1991, when his motorcycle rear-ended a United Parcel Service Truck. Welshans was taken to the hospital, where he refused a police request that he submit to a blood alcohol test. A medical blood alcohol test taken shortly after the accident by the hospital to render treatment, however, revealed that Welshans' blood alcohol content was .16%.

A certified copy of Welshans' driving record revealed that Welshans' driver's license had been suspended by the Department of Transportation beginning July 21, 1980. At the time of this accident, his license had been suspended for driving while his license was suspended as a result of a non-DUI offense. His driving record also showed that subsequent to his suspension for driving while his license was suspended for

a non-DUI offense, he was also subject to another suspension as a result of a DUI-related conviction. The DUI-related suspension was to take effect on December 21, 1992, after the periods of suspension for earlier non-DUI-related offenses had expired, i.e. consecutive to the non-DUI-related license suspension periods.

Based on this evidence, the trial court found that Welshans was driving while his license was suspended for a DUI-related offense even though the actual suspension was not scheduled to begin being served until 1992. Nonetheless, Welshans was convicted in the Lycoming County Court of Common Pleas of driving under the influence of alcohol or controlled substance and driving while his license had been suspended for a DUI-related offense. The trial court sentenced Welshans to 60 days to 23 months imprisonment and a fine of $800.00 for the new DUI-related conviction, and 180 days imprisonment and a $1,000.00 fine on the conviction for driving while his license was suspended for a prior DUI-related offense under 75 Pa.C.S. § 1543(b). Welshans now appeals from the order of the Superior Court affirming the judgment of sentence.[4]

## COMMONWEALTH v. KING

Appellant Raymond King was stopped on September 6, 1991, for travelling 78 mph in a 55 mph speed zone. A blood alcohol test was performed shortly thereafter and King's blood alcohol content was determined to be .213%. A certified copy of his driving record revealed that King tendered his license to the Department of Transportation on March 31, 1982. The record further revealed that at the time he was stopped for speeding in this matter, King's license had been suspended for two years as a habitual offender due to a prior conviction of driving while his license was under suspension for a non-DUI-related offense. King's record also revealed that his license had been suspended for fifteen days effective July 30, 1993, for reckless driving, for five years effective August 14, 1993, as a

---

4. Appellant Welshans also challenged his sentence under 75 Pa.C.S. § 6503, providing for enhanced penalties for a second or subsequent DUI conviction. However, allocatur was not granted on this issue.

habitual offender for driving while his license was suspended and for twenty days effective August 14, 1989, for leaving the scene of an accident. King's record also reflected that he had been convicted of a prior DUI-related offense for which a two year license suspension was scheduled to become effective on September 3, 1998, following the completion of the earlier periods of suspension previously imposed for the non-DUI offenses. As of the date of the underlying incident, King would not become eligible to reapply for a driver's license until October 3, 2004.

Based on this evidence, on December 7, 1992, King pleaded guilty to driving under the influence of alcohol or controlled substance,[5] exceeding the maximum speed limit[6] and driving while his license was under suspension for a prior DUI-related conviction.[7] The Fayette County Court of Common Pleas sentenced King to 30 days to six months imprisonment, a one year license suspension and a $500.00 fine for driving under the influence, and to 90 days imprisonment and a $1,000.00 fine for driving while his license was under suspension for a prior DUI-related offense under 75 Pa.C.S. § 1543(b). The Superior Court affirmed the trial court's judgment of sentence and King now appeals to this Court.

## DISCUSSION

■ Section 1543(b) of the Motor Vehicle Code, as previously stated in footnote 3, provides:

Any person who drives a motor vehicle on any highway or traffic-way of this Commonwealth *at a time when their operating privilege is suspended or revoked* as a condition of acceptance of Accelerated Rehabilitative Disposition for a violation of section 3731 (relating to driving under the influence of alcohol or controlled substance) or *because of a violation of section* 1547(b)(1) (relating to suspension for refusal) or *3731* shall, upon conviction, be guilty of a summary offense and shall be sentenced to pay a fine of

5. 75 Pa.C.S. § 3731(a).

6. 75 Pa.C.S. § 3362(a)(2).

7. 75 Pa.C.S. § 1543(b).

$1,000.00 and to undergo imprisonment for a period of not less than 90 days.

75 Pa.C.S. § 1543(b) (emphasis added). Jenner, Welshans and King all argue that they should not have been sentenced under the enhanced sentencing provisions of § 1543(b) of the Motor Vehicle Code because their DUI-related license suspensions were not in effect at the time they were stopped and, therefore, they argue that they can only be sentenced under § 1543(a) (pertaining to driving while license is suspended or revoked for a non-DUI-related offense), which does not provide for mandatory incarceration or fines.[8] Appellants' argument, however, ignores several other pertinent sections of the Motor Vehicle Code which, when read *in pari materia*, clearly demonstrate that a second or subsequent suspension becomes effective immediately and serves to *extend* the period of suspension rather than to become effective *consecutive* to the previous suspension's expiration.

Sections 1544(b)–(d) of the Motor Vehicle Code provide in pertinent part:

**(b) Additional suspension.**—When any person's record shows an additional suspension of the operating privilege assessed during a period of suspension or revocation, the department shall *extend* the existing period of suspension or revocation for the appropriate period and the person shall be so notified in writing.

**(c) Revocation during suspension.**—When any person's record shows an additional conviction calling for revocation of the operating privilege during a period of suspension, the department shall *add* the appropriate revocation onto the period of suspension and the person shall be so notified in writing.

**(d) Revocation during revocation.**—When any person's record shows a conviction calling for revocation of the

**8.** **Offense defined.**—Except as provided in subsection (b), any person who drives a motor vehicle on any highway or traffic-way of this Commonwealth after the commencement of a suspension, revocation or cancellation of the operating privilege and before the operating privilege had been restored is guilty of a summary offense and shall, upon conviction, be sentenced to pay a fine of $200. 75 Pa.C.S. § 1543(a).

operating privilege during a period of revocation, the department shall *extend* the existing period of revocation for the appropriate period and the person shall be so notified in writing.

75 Pa.C.S. § 1544(b)–(d) (emphasis added). As each of the sections indicates, the subsequent suspensions or revocations serve only to extend or add to the suspension and/or revocation then in effect. The suspensions or revocations are not tolled until preceding earlier suspensions expire, since such an interpretation would allow a suspended or revoked driver to avoid the enhanced penalties at issue. To phrase this in another way, two or more suspensions or revocations are not to be imposed consecutively or seriatim to each suspension, but subsequent suspensions or revocations simply extend the length of the time the license is to be suspended or revoked.

This finding is further supported by the provision of the Motor Vehicle Code dealing with the surrender of licenses and the commencement of the period of revocation or suspension. Section 1541(a) of the Motor Vehicle Code provides:

The period of revocation or suspension of the operating privilege shall commence as provided for in section 1540 (relating to surrender of license). No credit toward the revocation or suspension shall be earned until the driver's license is surrendered to the department, the court or the district attorney, as the case may be. A non resident licensed driver or an unlicensed driver shall submit an acknowledgment of suspension or revocation to the department in lieu of a driver's license. The department may, upon the request of the person whose license is suspended, delay the commencement of the period of suspension for a period not exceeding six months whenever the department determines that failure to grant the extension will result in hardship to the person whose license has been suspended.

75 Pa.C.S. § 1541(a). Section 1540(a) of the Motor Vehicle Code, (governing the surrender of licenses), provides in pertinent part:

**(a) Conviction of offense.**—*Upon conviction by a court* of competent jurisdiction for any offense which calls for *man-*

*datory suspension* in accordance with section 1532 (relating to revocation or suspension of operating privilege), the court or the district attorney shall require the surrender of any driver's license then held by the defendant and shall forward the driver's license together with a record of the conviction to the department. *The suspension or revocation shall be effective upon a date determined by the court or district attorney or upon the date of surrender of the license to the court or district attorney, whichever shall first occur.*[9]

75 Pa.C.S. § 1540(a) (emphasis added).

In the present cases, appellants had previously surrendered their licenses to the department as required under § 1540(a), which does not require that the license be surrendered subsequent to notification in order for the suspension to be effective

---

9.  § 1532.  **Revocation or suspension of operating privilege.**

(a) **Revocation.**—The department shall revoke the operating privilege of any driver for one year upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on any of the following offenses:

(1) Any felony in the commission of which a court determines that a vehicle was essentially involved.

(2) Any violation of section 3732 (relating to homicide by vehicle while driving under the influence).

(3) Any violation of the following provisions:

Section 3732 (relating to homicide by vehicle).

Section 3742 (relating to accidents involving death or personal injury).

Section 7102(b) (relating to removal or falsification of identification number).

Section 7103(b) (relating to dealing in vehicles with removed or falsified numbers).

Section 7111 (relating to dealing in titles and plates for stolen vehicles).

Section 7121 (relating to false application for certificate of title or registration).

Section 7122 (relating to altered, forged or counterfeit documents and plates).

(b). **Suspension.**—

(1) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of or an adjudication of delinquency based on any offense under the following provisions:

Section 3367 (relating to racing on highways).

prior to the effective date. Therefore, the DUI-related revocation or suspension became effective immediately upon receipt of the record of the conviction by the *department* under § 1532(b)(3), which provides that operating privileges are to be suspended by the Department upon receipt of a certified copy of the driver's conviction for driving under the influence of alcohol.[10]

Because appellants' licenses were suspended as the result of convictions in accordance with § 1543(b), their periods of

> Section 3733 (relating to fleeing or attempting to elude police officer).
> Section 3734 (relating to driving without lights to avoid identification or arrest).
> Section 3736 (relating to reckless driving).
> Section 3743 (relating to accidents involving damage to attended vehicle or property).
> (2) The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of the driver's conviction of a subsequent offense under the following provisions:
> Section 1501(a) (relating to drivers required to be licensed).
> Section 1543 (relating to driving while operation privilege is suspended or revoked).
> (3) The department shall suspend the operating privilege of any driver for 12 months upon receiving a certified record of the driver's conviction of section 3731 (relating to driving under influence of alcohol or controlled substance) or an adjudication of delinquency based on section 3731. The department shall suspend the operating privilege of any driver for six months upon receiving a certified record of a consent decree granted under 42 Pa.C.S. Ch. 63 (relating to juvenile matters) based on section 3731.
> (4) This subsection does not effect any additional period of revocation of the operating privileges of a driver who receives an additional period of revocation for a second or subsequent violation of section 1543.

10. Appellants argue that their DUI-related suspensions do not become effective until the "effective date" set by the Department. That position would arguably be correct if appellants' licenses had been suspended under Section 1540(b), which provides:

> **(b) Suspension, revocation or disqualification of operating privilege.**—Upon the suspension or revocation of the operating privilege or the disqualification of the commercial operating privilege of any person *by the department,* the department shall forthwith notify the person in writing at the address of record to surrender his driver's license to the department for the term of the suspension, revocation or disqualification. *The suspension, revocation or disqualification shall be effective upon a date determined by the department or the date of the surrender of the license to the department if that date is*

suspension became effective immediately upon receipt of the certified conviction by the department under § 1540(a) and the "effective date" is only relevant for purposes of determining when appellants will be eligible to have their driving privileges reinstated or to reapply for revoked licenses. *Commonwealth v. MacSherry*, 371 Pa.Super. 164, 171, 537 A.2d 871, 875 (1988) (failure to surrender driver's license does not forestall suspension for penalty purposes; section 1541(a) simply prescribes the method of computation by which to determine the termination of the suspension period). Clearly the legislature intended to apply the penalties for driving while under a license suspension to drivers who, as a result of their noncompliance with the statute, were not yet eligible to receive credit toward that period of suspension. *Id.*[11]

Appellants' second claim is that it is a violation of the equal protection clause to apply the enhanced penalty provi-

> *subsequent to the department's notice to surrender the license,* whichever occurs first. . . .

75 Pa.C.S. § 1540(b) (emphasis added). However, because appellants' licenses were suspended as the result of DUI convictions, their licenses were revoked under Section 1540(a), which does not provide that the suspensions are effective on the "effective date" set by the Department, but provides for immediate suspension on turning over the license (or earlier if the court decrees).

11. A recent amendment to § 1543(b) confirms that the legislature intended that section to apply during all periods of suspension accrued prior to a DUI-related suspension. The following subsection was added to 1543(b) effective September 1, 1995:

> (2) This section shall apply to any person against whom one of these suspensions has been imposed whether the person is currently serving this suspension or whether the effective date of suspension has been deferred under any of the provisions of section 1544 (relating to additional period of suspension or revocation). This provision shall also apply until the person has had the operating privilege restored. This subsection shall also apply to any revocation imposed pursuant to section 1542 (relating to revocation of habitual offender's license) if any of the enumerated offenses was for a violation of section 3731.

Prior to a vote in the House, one of the authors of the amendment stated that the amendment, "codifies some existing language or some existing court decisions in the first section." Mr. Masland, March 22, 1994, Legislative Journal of the House at 608. Thus, the amendment was merely a clarification of the state of the law as it existed at the time of appellants' violations.

sions of § 1543(b) to drivers whose DUI-related suspensions will not begin to run until some point in the future. Legislation enacted by the General Assembly carries a strong presumption of constitutionality, and the party challenging the constitutionality of any statute bears the heavy burden of demonstrating that the statute is clearly, palpably and plainly unconstitutional. *Commonwealth v. Burnsworth,* 543 Pa. 18, 24, 669 A.2d 883, 886 (1995). Under an equal protection analysis, a classification which does not impermissibly interfere with a fundamental right or disadvantageously affect a suspect class will be upheld as long as it passes a rational relationship test. *Id.* at 30, 669 A.2d at 889.

■ This Court has often stated that driving is a privilege, not a fundamental right. *Commonwealth v. Zimmick,* 539 Pa. 548, 559, 653 A.2d 1217, 1222–23 (1995); *Commonwealth v. Yarger,* 538 Pa. 329, 335, 648 A.2d 529, 531 (1994); *Commonwealth v. Funk,* 323 Pa. 390, 394, 186 A. 65, 67–68 (1936). Moreover, § 1543(b) does not burden a suspect class. Therefore, in order to prevail on an equal protection claim, the person claiming the violation must establish that the asserted classification and disparate treatment of certain drivers does not bear a rational relationship to a legitimate state interest. *Commonwealth v. Hicks,* 502 Pa. 344, 348, 466 A.2d 613, 615 (1983), *appeal dismissed,* 465 U.S. 1015, 104 S.Ct. 1260, 79 L.Ed.2d 668 (1984).

■ Because police powers are extremely broad, especially in relation to the safety of those who use the Commonwealth's highways, this Court has held that legislation enacted for the purpose of protecting those who travel the roads of this Commonwealth from intoxicated drivers does not violate equal protection as long as the legislation does not impinge upon a suspect class or upon a fundamental right. *Mackey v. Montrym,* 443 U.S. 1, 17–18, 99 S.Ct. 2612, 2620–21, 61 L.Ed.2d 321 (1979); *Commonwealth v. Mikulan,* 504 Pa. 244, 261, 470 A.2d 1339, 1347 (1983). The legislature's decision to punish persons with mandatory prison sentences who continue to drive prior to the expiration of DUI-related license suspen-

sions is rationally related to the state interest of protecting those who use the state's highways by keeping intoxicated drivers off of those highways. *Mackey, supra; Mikulan, supra.* Therefore, the application of § 1543(b) from the date of the DUI conviction resulting in a suspension until the date on which driving privileges are restored withstands equal protection scrutiny.

Finally, appellants argue that the application of the mandatory sentencing provisions of § 1543(b) prior to the effective date on the DUI-related suspension notification fails to give drivers with outstanding non-DUI-related suspensions proper notice that they are subject to the enhanced penalties of the statute prior to the effective date of the DUI-suspension. However, as discussed above, a careful reading of the Motor Vehicle Code makes it clear that appellants were under DUI-related suspensions from the time the Department of Transportation received notice of their DUI convictions. Therefore, although the period of revocation or suspension does not begin to run for computation purposes until the effective date, appellants were subject to the penalty provisions applicable for driving while their licenses were suspended as a result of a DUI-related conviction. To hold otherwise would create the absurd result of allowing drivers whose licenses have been suspended as a result of a DUI conviction to avoid the enhanced consequences of continuing to drive until some point in the future simply because they have flagrantly disregarded the Motor Vehicle Code in the past. In construing statutes, we assume that the legislature did not intend an absurd result. 1 Pa.C.S. § 1922(1).

## CONCLUSION

The purpose of § 1543(b) is to prevent drivers who have been convicted of driving under the influence from operating motor vehicles on the public roads of the Commonwealth by enhancing the penalties for recidivist violators. If we were to accept the argument advanced by appellants, we would be permitting appellants to avoid the mandatory sentencing provisions imposed on drunk drivers for disregarding a suspen-

460

sion of driving privileges simply because appellants have a history of violating the Motor Vehicle Code which has resulted in long term license suspensions which have not expired at the time of their DUI violations or their subsequent violations of the Motor Vehicle Code.

For the foregoing reasons, we hold that once a driver is notified that his license is suspended as a result of a conviction for driving under the influence under 75 Pa.C.S. § 3731, he is subject to the enhanced sentencing provisions of § 1543(b) for the duration of any prior periods of suspension or revocation until the completion of the DUI-related suspension. The effective dates provided by the Department of Transportation in such cases are simply for the purpose of determining when the DUI-related suspension is completed.

The judgments of sentence are affirmed.

ZAPPALA and CAPPY, JJ., concur in the result.

NIGRO and NEWMAN, JJ., join only in *Commonwealth v. Welshans,* 72 Middle District Appeal Docket 1994.

MONTEMURO, Senior Justice, did not participate in the decision of the cases in 71 Middle District Appeal Docket 1994 and 49 Western District Appeal Docket 1994.