EMPIRE STEEL CASTINGS,
INC., Petitioner,

v.

WORKERS' COMPENSATION AP-
PEAL BOARD (CRUCETA),
Respondent.

Commonwealth Court of Pennsylvania.

Submitted on Briefs Nov. 24, 1999.
Decided April 11, 2000.

Joseph C. Patterson, Harrisburg, for petitioner.

Clifford B. LePage, Jr., Reading, for respondent.

Before SMITH, J., FLAHERTY, J., and JIULIANTE, Senior Judge.

FLAHERTY, Judge.

Empire Steel Castings, Inc. (Employer) petitions for review from an order of the Workers' Compensation Appeal Board (Board) which affirmed an order of the Workers' Compensation Judge (WCJ) that granted Elpidio Cruceta's (Claimant) claim petition. We affirm.

The WCJ made the following relevant findings of fact (F.F.):

1. Claimant filed a claim petition on October 11, 1996, alleging that he had become temporarily disabled from his job as a grinder from Empire Steel due to a work-related neck injury involving herniated discs at C5, C6 and C7 incurred on a repetitive basis from April 15, 1996 to May 15, 1996.

2. Claimant's injury was caused by lifting large pieces of steel often weighing more than 50 pounds throughout the work day.

3. Claimant underwent cervical surgery with David Allen, M.D., a neurosurgeon on July 5, 1996 and again on February 7, 1997 and has remained temporarily totally disabled from June 12, 1996 to the present.

4. Claimant also incurred a permanent disfiguring cervical scar about 3 inches long ... such as to cause an unsightly appearance.

5. Claimant was disabled due to said injury from June 12, 1996 until the present and ongoing. Defendant [Employer] has offered no light/restricted duty work to claimant at any time following his convalescence from the two surgeries.

6. Throughout the period of his disability and as a result of his work-related neck injury, claimant has been treated primarily by David Allen, M.D., a neurosurgeon. Dr. Allen performed surgery upon claimant's neck on July 5, 1996 and on February 26, 1997. Both surgeries being followed by convalescent periods.

7. Claimant presented a deposition and operative and medical reports from Dr. Allen which medical evidence unequivocally established claimant's work-related disability resulting from his cervical injuries including herniated discs.

8. Claimant's testimony coupled with the medical evidence establishes that his condition was caused and/or substantially aggravated by his work activities.

. . . .

10. This Judge accepts claimant's testimony and medical evidence as to his work-related disabling neck injury and as to the period of compensation from June 12, 1996 to the present and ongoing.

11. This Judge accepts claimant's need for medical treatment, two surgeries and the respective bills and costs as set forth in the findings of fact, as well as claimant's permanent disfiguring cervical surgical scar.

12. This judge rejects the opinion of Dr. Katz which was submitted on behalf of the defendant [Employer]. Specifically, this Judge rejects Dr. Katz's opinion that claimant's injury and disability and scar were not work related. This Judge noted that claimant sustained no other traumatic injuries during the time in question other than work-related injuries on the repetitive basis in the work place and that Dr. Katz was unable to attribute claimant's neck injury to any other traumatic incidents other than the work-related ones thereby rendering his testimony not credible.

WCJ's decision of November 25, 1997. Accordingly, the WCJ granted Claimant ongoing disability benefits as well as an award of $263.50 per week for 40 weeks for the permanent disfiguring scar. Employer appealed to the Board which affirmed. Employer now petitions this court for review.[1]

The first issue which Employer raises is whether the WCJ's decision should be overturned because there is insufficient factual and medical evidence to support the award of benefits. Employer argues that

The WCJ's decision indicates that the Claimant's job entailed lifting over 50 pounds of steel on a regular basis. There is no evidence to support that assertion. Claimant's job involved grinding steel which weighed up to 10,-000 pounds by the use of a grinder which weighed 35 pounds. The steel was held on cables attached to a crane. The Claimant admitted he did not have to lift any steel. Therefore the WCJ's

1. Appellate review over an order of the Board is limited to determining whether substantial evidence supports the WCJ's necessary factual findings, whether constitutional rights were violated or errors of law were committed. *Capuano v. Workers' Compensation Appeal Board (Boeing Helicopter)*, 724 A.2d 407 (Pa. Cmwlth.1999).

decision that the Claimant's job entailed lifting steel was incorrect.

Employer's brief at p. 9. In addition, Employer asserts that Claimant's description of his job on the record is confusing and inaccurate. Essentially, Employer is arguing that there is no substantial evidence to support the WCJ's F.F. No. 2.

 Substantial evidence is such relevant evidence as a reasonable person might accept as adequate to support a conclusion. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 612 A.2d 434 (1992). Additionally, in performing a substantial evidence analysis, this court must view the evidence in a light most favorable to the party who prevailed before the factfinder. *Birmingham Fire Ins. Co. v. Workmen's Compensation Appeal Board (Kennedy)*, 657 A.2d 96 (Pa.Cmwlth.1995). Moreover, the party prevailing before the factfinder is entitled upon appellate review to "have the benefit of the most favorable inferences deducible from the evidence[.]" *Flexer v. Workmen's Compensation Appeal Board (Wilson)*, 12 Pa.Cmwlth. 405, 317 A.2d 53, 53 (1974). Furthermore, it does not matter that there is evidence in the record which supports a factual finding contrary to that made by the WCJ, rather, the pertinent inquiry is whether there is any evidence which supports the WCJ's factual finding. *Grabish v. Workmen's Compensation Appeal Board (Trueform Foundations)*, 70 Pa.Cmwlth. 542, 453 A.2d 710 (1982). It is solely for the WCJ, as the factfinder, to assess credibility and to resolve conflicts in the evidence. *Bethenergy Mines*. In addition, it is solely for the WCJ, as the factfinder, to determine what weight to give to any evidence. *Dana v. Workers' Compensation Appeal Board (Hollywood)*, 706 A.2d 396 (Pa. Cmwlth.1998), *allocatur denied*, 556 Pa. 696, 727 A.2d 1123 (1998). As such, the WCJ may reject the testimony of any witness in whole or in part, even if that testimony is uncontradicted. *Id.* It is

with these principles in mind that we consider Employer's challenge.

 It should be noted that English is not Claimant's native language. Claimant is originally from the Dominican Republic and does not speak English very well. Reproduced Record (R.R.) at p. 57a & 314a. As a result, Claimant testified through an informal interpreter, a friend of his. R.R. at 57a. The following testimony was given by Claimant:

Q. [by Claimant's attorney] Did you have to lift things?

A. Yes.

Q. What did you have to lift?

A. The right hand, the grinder, it was 35 pounds.

Q. What were you grinding?

A. All different things.

Q. What did you grind, pieces of what?

A. It's big pieces.

Q. Is it steel?

A. Steel.

Q. How heavy are these pieces of steel?

A. About 10,000 pounds are the pieces.

Q. All right. The pieces that you run, what are they — let me try this again.

*JUDGE EADER:*

Well, you heard on the [claim] Petition that they weighed 50 pounds or more and he had to lift pieces of steel on a repetitive basis.

Q. [by Claimant's attorney] Did you have to lift these pieces of steel weighing about 50 pounds or more.

A. Yes.

Q. Did you have to lift them?

A. Yeah. These are the grinders. The crane.

Q. Did you have to carry these pieces?

A. Yes, big pieces.

Q. And did you have to do this all day every day?

A. Every day, every day, yes ——.

R.R. at pp. 60–61. Claimant went on to testify that while he was doing his job tasks, he began to feel pain in his neck and that he had to take two weeks away from work due to the pain. R.R. at p. 62a. Viewing this evidence in a light most favorable to the Claimant, as we are required to do, this evidence is such evidence as a reasonable person might accept as adequate to support the conclusion that Claimant's job involved the repetitive carrying of pieces of steel weighing 50 pounds or more. Nevertheless, Employer points to the following testimony of Claimant on cross examination and suggests that the following testimony renders Claimant's testimony so contradictory as to cause it to be equivocal and therefore incompetent. On cross examination, Claimant stated the following:

> Q. [by Employer's attorney] Mr. Cruceta, you said you had to lift things at work.
>
> A. Yes.
>
> Q. .... The grinder weighs 35 pounds; right?
>
> A. Yeah.
>
> Q. The steel is on a crane; right?
>
> A. Uh-uh (yes).
>
> Q. So you're not lifting the steel; right?
>
> A. Yes.

R.R. at p. 68a. Empire suggests that Claimant testified contradictorily that he both lifted steel over 50 pounds and that he did not lift steel. While it is true that this testimony is susceptible of such an interpretation as Employer urges, it is not the only interpretation. When reading this evidence in a light most favorable to the Claimant as the party who prevailed before the factfinder and giving him the benefit of the most favorable inferences deducible from the evidence, we find that the WCJ could have understood this evidence to mean that Claimant did lift pieces of steel weighing 50 pounds or more but that the steel which is on a crane and about which Employer's attorney inquired,

he does not lift. Thus, there is no contradiction. Hence, Claimant's testimony is not so internally inconsistent as to render it equivocal and thus legally incompetent. Thus, in light of Claimant's testimony that he daily lifted pieces of steel weighing 50 pounds or more, there is substantial evidence supporting that part of WCJ's F.F. No. 2 that Claimant lifted pieces of steel weighing 50 pounds or more throughout his work day.

▮ Employer further argues that although Claimant's job duties involved the lifting of a 35–pound grinder on a daily basis, contrary to Claimant's testimony, his duties did not involve the lifting of any steel. We note, however, that we are restricted to examining the record formed before the WCJ and the Board below, and statements of facts in briefs which are otherwise unsupported by record evidence cannot form the basis of an action by an appellate court. *Commonwealth v. Lloyd*, 376 Pa.Super. 188, 545 A.2d 890, 894 (1988), *allocatur denied*, 522 Pa. 602, 562 A.2d 825 (1989)("It is well settled that an appellate court cannot properly consider averments of facts appearing only in a party's brief and which are not part of the record."). Employer does not point out where in the record there is support for its contention that Claimant's job did not include lifting steel pieces weighing over 50 pounds or that in fact Claimant did not do so. However, even had Employer presented such evidence, the WCJ was not required to believe such evidence in the face of Claimant's testimony to the contrary. *Dana, supra*, (WCJ, as sole arbiter of credibility may accept or reject any evidence in whole or in part).

▮ Employer also argues that Dr. Allen's testimony and expert opinion that Claimant's injury was work related is incompetent because it is based upon an inaccurate understanding of Claimant's job, namely, that Claimant repetitively lifted pieces of steel weighing around 50 pounds. Employer's brief at pp. 9–10. As such, Employer urges that there is no

substantial evidence supporting a causal connection between Claimant's cervical problems and his work. Unfortunately for Employer, the "facts" of any case are the facts as found by the WCJ so long as there is substantial evidence to support them. *See Arena v. Packaging Systems Corp. & Workmen's Compensation Appeal Board,* 510 Pa. 34, 39, 507 A.2d 18, 20–21 (1986)("it is not within the province of a reviewing court to make findings of fact, but rather the reviewing court must take as true the evidence and all reasonable inferences therefrom supporting the decisions of the Board. Stated otherwise, the findings of fact of the Board are conclusive on appeal....") (citations omitted). As the WCJ found as a fact that Claimant did lift pieces of steel weighing 50 pounds or more throughout his work-day, a finding supported by substantial evidence, we are precluded from concluding Dr. Allen's opinion regarding causation based upon that factual premise was erroneous. Thus, because Claimant testified that he lifted steel pieces weighing at least 50 pounds on a daily basis and because Dr. Allen testified that such activity caused Claimant's disability, there is substantial evidence of record to support the WCJ's F.F. No. 2 and his award of compensation.

■ Employer's second issue is that the WCJ's decision should be overturned because there is insufficient medical evidence supporting the need for a second surgery and/or ongoing disability. Employer argues that because Dr. Allen's opinion and testimony about the need for the second surgery and Claimant's ongoing disability as a result thereof and the causal relationship of both the second surgery and the disability to Claimant's work is based upon Dr. Grabias' notes and reports, Dr. Allen's testimony is incompetent as based upon hearsay.[2] However, it has long been held as an exception to the hearsay rule that a medical witness may express an opinion based upon medical records of others even if those records were not introduced into evidence so long as they are the kind of records upon which the medical profession customarily relies in the practice of their profession. *Commonwealth v. Thomas,* 444 Pa. 436, 282 A.2d 693 (1971); *Mithani v. Workers' Compensation Appeal Board (Mt. Airy Lodge),* 730 A.2d 566, 569 (Pa.Cmwlth. 1999). Here, the notes and reports of Dr. Grabias are just such records. Thus, Employer's second argument is without merit.

Next, Employer argues that the WCJ's credibility determination in rejecting Dr. Katz's testimony should be overturned. Employer's brief at pp. 13–14. Employer argues that the reason which the WCJ gave for rejecting Dr. Katz's testimony was illogical. The WCJ rejected Dr. Katz's testimony because essentially Dr. Katz was not able to attribute Claimant's complaints of pain at the relevant time to any other traumatic event. Dr. Katz simply testified that the pain Claimant was experiencing was due solely to a non-work related chronic condition. R.R. at pp. 338a–345a. Employer contends that because Dr. Katz attributed Claimant's problems to a pre-existing non-work related condition, it was illogical to require Dr. Katz to attribute it to a non-work related traumatic event.

■ We do not agree. We do not understand the WCJ's statement of reason for rejecting Dr. Katz's testimony to mean that he required Dr. Katz to only attribute a traumatic event as causing Claimant's disability. Rather, we understand his statement to merely be elliptical, i.e., an explanation that he found Dr. Katz's testimony regarding the asserted chronic nature of Claimant's problems unconvincing and in the absence of any other convincing explanation for Claimant's problems, re-

2. Dr. Grabias assisted in the treatment of Claimant. More specifically, Dr. Grabias was responsible for monitoring Claimant's progression with his cervical fusion and Dr. Gra-bias also provided for a course of physical therapy for Claimant. R.R. at 154a, 256a–258a.

jected Dr. Katz's expert opinion in favor of Dr. Allen's testimony as was his right. *Dana.* In so concluding, we recognize that the WCJ found Claimant's medical expert credible and that Claimant's medical expert was his treating physician who performed the two surgeries upon Claimant in contrast to Dr. Katz who examined Claimant once on June 17, 1997. R.R. at pp. 314a & 356a. Accordingly, we do not find that this issue merits Employer any relief.

▮▮▮▮ Employer next argues that the WCJ's decision should be overturned because the WCJ failed to issue a reasoned decision pursuant to Section 422(a) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 834. We disagree. What was said by this court in *Roccuzzo v. Workers' Compensation Appeal Board (School District of Philadelphia),* 721 A.2d 1171, 1175 (Pa. Cmwlth.1998) applies equally here:

> [w]e recognize that "the WCJ's prerogative to determine the credibility of witnesses and the weight to be accorded evidence has not been diminished by the amendments to Section 422(a). Such determinations are binding on appeal unless made arbitrarily and capriciously." *PEC Contracting Engineers v. Workers' Compensation Appeal Board (Hutchison),* 717 A.2d 1086, 1089 (Pa. Cmwlth.1998). The WCJ's explanation reflects that his decision was not made in an arbitrary or capricious manner.

Likewise here, the WCJ's decision was not made in an arbitrary or capricious manner. Thus, this issue affords Employer no relief.

▮▮▮▮ Finally, Employer argues that the decision of the WCJ should be reversed insofar as the WCJ failed to give a credit to the Employer for disability payments paid to the Claimant through premiums paid by the Employer. We agree with the Board in its disposition of this issue. The Board concluded that

> the Judge did not address the issue of a credit for sickness and accident benefits paid to Claimant. However, after reviewing the entire record of evidence, this Board can find no reference to a request for a credit for sickness and accident benefits paid. The Commonwealth Court has held that an employer's credit for sickness and accident benefits must be raised in the initial claim petition, or it is waived. *Whiteside v. W.C.A.B. (Unisys Corp.),* 168 Pa. Cmwlth. 488, 650 A.2d 1202 (1994)[, *allocatur denied,* 544 Pa. 650, 664 A.2d 978 (1995) ]. Since there was no evidence that Defendant [Employer] raised this issue during the litigation of this matter, it is concluded that the Judge did not err in failing to address it in his Findings of Fact.

Board's opinion at p. 7. Employer does not argue in his brief to this Court that it made such a request of the WCJ for a credit; rather, Employer merely states that there was evidence of record which would justify such a credit. However, even if there is evidence of record which would justify such an award, the WCJ is not required to sua sponte make such an award in the absence of a request to do so. Employer points to no such legal authority for such a proposition. Perhaps more tellingly, Employer points to no portion of the record wherein Employer requested such a credit. Accordingly, this issue does not afford Employer relief.

As none of the Employer's issues merit a reversal, the order of the Board is affirmed.

### ORDER

AND NOW, this 11th day of April, 2000, the order of the Worker's Compensation Appeal Board docketed at No. A97–5627 and dated July 27, 1999 is hereby affirmed.